## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| MARLENE THOMPSON LONG, | ) | |
| VINCENT LONG, AND | ) | |
| CHRISTINA LONG | ) | |
| | ) | **CIVIL ACTION NO:** |
| | ) | **1:10-cv-03033-TCB** |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | |
| | ) | |
| **FULTON COUNTY SCHOOL** | ) | |
| **DISTRICT,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT AND JURY DEMAND

Complainants, by and through their undersigned counsel, the Starkey Law Firm, LLC, hereby complains against the Defendant-Fund Recipient.

## INTRODUCTION

1.

This is an action to vindicate violations of the Plaintiff's civil rights and to redress the unlawful and discriminatory conduct and practices of the Defendant-Fund Recipient during Plaintiff Christina Long's pursuit of an equal education in the Fulton County, Georgia School System. This action is predicated upon discrimination based on age and sex. These acts were committed by the

Defendant–Fund Recipient by and through its North Fulton County School System, its teachers, curriculum support specialists, principals, superintendents and other agents.  These discriminatory actions took place over the course of three and half years. As a result of these pervasive and continuous discriminatory actions, despite Plaintiff's attempts to resolve the same, Complainants Vincent and Marlene Long, in August of 2009, were forced to remove Complainant Christina Long ("Christina") from the Fulton County Public Schools and place her in Private School at a cost of $8,317 dollars per year.

2.

Plaintiffs show that Defendant, by and through its Principals, Superintendents, Curriculum Support Specialist, Teachers, Assistant Principals, and others, singled Christina out and discriminated against her because of her "young age" and "sex" . Plaintiffs further show that Defendant County School District is the recipient of Federal Funds and/or Financial Assistance from the United States Department of Education and has discriminated against the Plaintiff's in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 et. al.  and the Age Discrimination Act of 1975, 42 U.S.C. Sections 6101-6107.

## JURISDICTION AND VENUE

### 3.

This action arises under the Authority vested in this Court by virtue of Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 et al.; the Age Discrimination Act of 1975, 42 U.S.C. Sections 6101-6107; the Fourteenth Amendments to the United States Constitution; and 42 U.S.C. 1983. The actions of defendants were under color of law. Venue is proper in this court.

## PARTIES

### 4.

Plaintiff Christina Long is a resident and citizen of Fulton County, Georgia.

### 5.

Plaintiffs Marlene and Vincent Long are also residents and citizens of Fulton County. They are Christina's parents and have brought this suit in their representative capacity.

6.

Defendant Fulton County School District is an entity of the State of Georgia and the political subdivision Fulton County, established under the laws of that State. Defendant Fulton County School District is the recipient of Federal Funds and/or Financial Assistance from the United States Department of Education.

## STATEMENT OF CHRONOLOGICAL AND
## PIVOTAL FACTS [1]
### First Grade: January to May of 2006

7.

On June 22, 2004, Christina was identified as intellectually gifted. At the time she was 3 years and 8 months old. Hofstra University located in Hempstead, New York administered the WPPSI-III, 3rd Edition and Christina Long's full scale IQ registered at 132. Mr. and Mrs. Long were advised by Hofstra University that "programs for intellectually gifted children should be considered for Christina."

---

[1] The statement of chronological and pivotal events is strictly an attempt to narrate the events and account of Plaintiffs' discrimination experience in the order of occurrence but is in no way intended to be a commentary or statement as to when Plaintiffs obtained knowledge of the sex/or age based discrimination. These events state a case of age and sex based discrimination.

Mr. and Mrs. Long were not able to find any gifted programs in their area for children Christina's age. On or about July 1, 2004, Christina was enrolled in a private school Pre-K program at Pat-Kam School in New York.  In February, 2005, the Pat-Kam School Director informed Mr. and Mrs. Long of his desire to promote Christina to Kindergarten.  After much thought and consideration, Mr. and Mrs. Long approved the acceleration to Kindergarten.

8.

On or about May 30, 2005, Christina Long completed the TerraNova 2nd Edition, standardized test for Kindergarten and scored as follows: 1) 90th percentile reading (above average); 2) 99th percentile Language Arts (above average); 62nd percentile Math (average); and overall 88th percentile (above average). At this time Christina Long was approximately 4 years and 7 months old.

9.

On or about June 5, 2005, at the age of 4 years and 8 months old, Christina Long completed Kindergarten.

10.

On or about October 12, 2005 Christina Long and family visited Alpharetta to find housing and a school due to Mrs. Long's pending job transfer.  Mrs. Long provided a letter to Fulton County Schools by its delivery to Deanna Rogers, Curriculum Support Teacher for Manning Oaks Elementary. Said letter indicated that Christina had already completed kindergarten and was in first grade at Pat-Kam School, a private school in New York.    Deanna Rogers stated that she could not accept any of Christina's tests whether standardized, IQ or otherwise and would certainly not accept any data from the Pat-Kam School. Deanna Rogers further stated that Christina was too young for the 1st grade and that she would not enroll her in the first grade but would consider allowing her to enroll in Kindergarten. This was not acceptable to the Longs, who in turn delayed their move to Georgia in order to enroll Christina in a public school in Long Island, New York. This was done to solidify Christina's eligibility to enroll in first grade once the Longs returned to Georgia.

11.

On or about September 6, 2005, at 4 years and 11 months old, Christina started first grade at Pat-Kam School.  On or about October 17, 2005 Christina

Long transferred to a public school; from the Pat-Kam School to Northern Parkway Elementary, Uniondale, New York.   Northern Parkway Elementary administered an assessment of Christina and the assessment indicated that Christina Long was reading on a second grade level. These results were communicated to the Mrs. Long from Christina's 1st grade teacher, Erin Smith.

12.

On or about December 16, 2005, Christina Long withdrew from Northern Parkway Elementary School as her family was moving to Alpharetta, Georgia. Upon withdrawal, Christina received her 1st quarter report card and her grades were as follows: 1) spelling 95%; grammar 92%; math 93%; social studies 98%; and science 98%.

13.

On or about January 9, 2006, Christina Long, notwithstanding the opposition and objection by Deanna Rogers, was enrolled in the first grade at Manning Oaks Elementary.  As was later discover by Mrs. Long, the words **"<u>UNDERAGE</u>"** were written on Christina's enrollment form by school personnel and immediately Christina Long was targeted because of her young age and.

14.

When Christina enrolled at Manning Oaks Elementary, she was 5 years and 3 months old.

15.

Christina's New York School records and results from IQ testing were submitted to Deanna Rogers, Curriculum Support Teacher ("CST") at Manning Oaks Elementary and the CST informed Mr. and Mrs. Long that none of Christina's records from New York would be considered in Christina's placement.

16.

Immediately, CST Deanna Rogers ("CST Rogers") begin to undermine, scheme and plot to prevent Christina's successful matriculation through the first grade at Manning Oaks Elementary.  More specifically, CST Rogers committed the following acts: 1) failed to consider Christina's records from other educational sources; 2) assessed Christina Long the first day of she attended school, without the permission of the Longs and  after assuring the Longs that Christina's assessment would not occur right way.  Mrs. Long had expressed to CST Rogers that Christina had been out of school for almost 4 weeks, was changing

environments and needed a small measure of adjustment time; 3) failed to advise Mr. and Mrs. Long that Christina had been assessed; 4) never advised Mr. and Mrs. Long about Fulton County Schools' Gifted Program and 5) never informed or explained Fulton County's Continuous Achievement policy (placement levels math and reading) which academically places a child within a particular level of learning (tracking) from which they cannot be moved.

17.

Only after a meeting requested by the Longs on January 16, 2006, with Ms. Elizabeth Maury, 1st grade teacher, did Mr. or Mrs. Long learn that Christina had been assessed and placed in "On Level" reading. The Longs interpreted the "On-Level" designation as meaning Christina was reading at a 1st grade level and shared with the teacher and CST that Christina was assessed in New York and it was determined that she was reading at a 2nd grade level. Ms. Maury informed the Longs that the CST agreed that the "on-level" group was appropriate for Christina. Upon a request by the Longs to view the assessment, they were permitted to view only the cover sheet (results) of the assessment, which had not been signed by anyone.  Mr. and Mrs. Long communicated to Ms. Maury and CST Rogers a willingness to work with the teacher and or administrators and their desire to be involved and aware of any issues involving Christina Long so that they could be

proactive in her education.  Mr. and Mrs. Long also expressed concerns about the manner in which the assessment was administered in light of CST Rogers' promise not to administer immediately and the fact that there was a complete failure to advise that the assessment had been administered at all.

18.

On or about February 1, 2006, Mrs. Long asked to see the actual reading assessment. Christina's teacher stated that the assessment had been administered by CST Rogers and CST Rogers claimed it was administered by the teacher. Furthermore, CST Rogers stated that no one (parent) had ever before requested to see the actual assessment.

19.

Beginning February 15, 2006, Mr. and Mrs. Long made multiple requests of Ms. Elizabeth Maury to provide information as to what had been covered in the curriculum during the first half of the school year (August 2005 through December 2005) to ensure Christina was prepared for the CRCTs, which they recently learned were forthcoming. Ms. Elizabeth Maury never provided the information to the Longs and insultingly referred them to the School Box Store and Fulton County Schools' website.  Upon information and belief, CST Rogers and Ms. Elizabeth

Maury, with malice, ill intent and/or deliberate indifference and reckless disregard for the result of their actions, intentionally failed to provide the Longs with information pertinent to Christina Long's education.  Upon availing herself of the sources referenced by Ms. Elizabeth Maury, Mrs. Long discovered that the covered curriculum was not available from these sources.

20.

On or about March 10, 2006, after not being able to obtain the requested curriculum information from Ms. Elizabeth Maury, Mrs. Long contacted Sharon Reinig, Principal of Manning Oaks Elementary. Mr. and Mrs. Long shared their frustration with Sharon Reinig, about the teacher's unwillingness and resistance in providing covered curriculum and or monthly 1st grade newsletters, which state the academic areas covered. Ultimately, the Principal provided the requested information on or about March 15, 2006.

21.

On or about March 20, 2006, Mr. and Mrs. Long discovered there were three different math groups in Ms. Elizabeth Maury's class.  They immediately requested math assessment results and placement from Ms. Maury. Also, Ms. Maury was asked about the distinction of each group and inquired as to which

group Christina Long was placed.  Ms. Maury stated that Christina scored 32/40 on the assessment and was in math level 1.2.  Mr. and Mrs. Long learned two years later that 1.2 was not a class placement level.  Christina's actual level was never disclosed.  Mr. and Mrs. Long were neither told about the separate math groups when Christina enrolled at Manning Oaks Elementary nor the long term impact of such designations.

22.

The Longs were never informed by the teacher or school administrators about the existence of a gifted program administered by Fulton County Schools. This was the case, notwithstanding their active involvement and attempts to have Christina placed in a curriculum that would challenge her demonstrated high achievement. The Longs were not made aware of counselors or the existence of gifted teacher.  Ms. Maury did not report any behavioral problems on Christina Long's report card in the first grade.  Christina took the 1st grade CRCT and "met expectations" in all areas tested; which included Reading, Language Arts and Math.

**Second Grade: August 2006 through August 2007**

23.

Ms. Porter, Christina's second grade teacher, administered an 18 week reading assessment to Christina Long. The Longs did not receive notification that such a test was going to be administered or when it was administered. The Longs met with Ms. Porter in December 2006 or January 2007 and was shown the math assessment, but there was no explanation of its significance. The assessment was not dated or signed.  Christina, notwithstanding her first grade math CRCT scores, and prior demonstration of math aptitude, scored 23% on the 18 week math assessment. Such performance was uncharacteristic of Christina.  The teacher never disclosed that this test would be used for any type of placement for the current or upcoming year.  The test was presented to the Longs as a mere indicator of areas the student needed to work on.  Unbeknownst to parents, these were placement assessments and the results were included in Christina Long's grades.

24.

On or about January 31, 2007, Mrs. Long asked Ms. Porter if Christina Long performed at an acceptable level on the Language Arts/Reading Assessments.  Ms. Porter answered in the affirmative and stated specifically that Christina Long's Language and Reading assessment score was a 41/50 (on level). However, on or about January 14, 2008, CST Rogers presented a doctored and/or forged document, in a meeting with the Longs and Fulton County School Administrators, that

indicated that Christina Long's score was 39/50 (below level), which effectively demonstrated a failure to meet the standard. Like the math assessment, the Language Arts/Reading assessment was also administered without any prior notification to the Longs and the significance of the test was not communicated.

25.

Christina's grades, behavior, and CRCT results for the second grade school year were as follows: A) 1st Semester - C in Math; C in Reading; A in Language Arts; and As in all other subjects; B) 2nd Semester - C, in Math, B in Reading; A in Language Arts; and As and Bs in all other subjects; C) CRCT Results: Math - Meets Expectation; Reading- Exceeds Expectation; and Language Arts- Meets Expectations. Christina Long did not receive any behavioral issues on her report cards all year.

26.

On or about May 1, 2007, before the start of the new school year, the Longs requested, in writing, a seasoned and mature 3rd grade teacher for Christina.

27.

On or about July 10, 2007, the Longs called Manning Oaks Elementary school several times to let school personnel know that Christina would be starting school 1 to 2 days late.  Mr. and Mrs. Long informed school that they would not make the meet the teacher night, but wanted to be assured that Christina Long had been assigned a teacher.  They were assured by front office personnel that Christina Long was assigned a teacher consistent with their request for experience.

## Third Grade:  August 2007 – August 2008

28.

Two days before school began in August 2007, Mrs. Long called the school again to find out to which teacher Christina was assigned. Mrs. Long was told that Christina Long was placed on the "no-show" list and not assigned a teacher. Christina Long arrived to school on the third day and was told to speak to CST Rogers. CST Rogers stated that the Longs should have spoken to her.

29.

Upon information and belief, Christina was assigned to a young and inexperienced teacher as a retaliatory measure taken by CST Rogers.  More specifically, CST Rogers assigned Christina Long to Ashley Rolader, a young

teacher with only two years experience, who could be easily influenced, controlled and/or convinced to be a complicit conspirator in CST Rogers' ongoing harassment and discrimination against Christina Long and her complaining parents.

30.

Furthermore, in a sarcastic and mocking tone, CST Rogers stated to Mr. and Mrs. Long that Christina Long was originally assigned to a more mature teacher, however; "because the Longs failed to check with her and clear things, Christina now had a not so mature and not so experienced teacher." Mrs. Long pleaded with CST Rogers to provide her with the name of the more mature teacher and requested that she go ahead and assign the original teacher to Christina.  CST Rogers, in her controlling manner, refused to identify the teacher and refused the placement.

31.

On August 20, 2007, at the request of Mr. and Mrs. Long, a parent/teacher conference with Ms. Rolader took place.  The Longs articulated their commitment to working with the teacher as a team and requested that they be contacted in order to be proactively involved in Christina's education.

32.

On or about October 1, 2007, the Longs received correspondence from Fulton County Schools ("FCS") about placement levels and reporting of levels on student report cards ("GPS & Placement Reporting in K-5") Mrs. Long, immediately, sent an e-mail to Ms. Rolader asking about Christina's placement. Mrs. Long also inquired about the lack of math homework and non- notification of tests (agendas were used as recording devices of the current day's work and did not include upcoming tests).  Ms. Rolader did not respond. Instead CST Rogers intercepted Mrs. Long's email and stated that she would set up a meeting to address Mrs. Long's concerns.

33.

On or about October 10, 2007, Mrs. Long and Ms. Rolader had a parent-teacher conference. Mrs. Long conveyed continued concern with Christina's placement and that Christina had been complaining that the vocabulary and spelling words were too easy.  Mrs. Long reviewed "On Level" workbooks for reading and explained to Ms. Rolader that Christina would have no problem completing the workbooks and requested that Christina be placed in the "On Level" group.  Ms. Rolader also confirmed that Christina's placement designation,

being "Support" was the same classification as the EIP students who leave the class for extra help.  Christina was not receiving any help because she neither required it nor had she ever been in jeopardy of failing.

34.

Right after her meeting with Mrs. Rolader, Mrs. Long had a conversation with Christina's second grade teacher, Ms. Porter and asked her where she had placed Christina in reading and math at the end of 2nd grade.  Ms. Porter stated that her placement of Christina was "On Level" in reading and math.

35.

Ms. Rolader agreed that Christina was doing very well in her vocabulary and stated that she would give Christina more challenging vocabulary and spelling words and that she would place Christina in the "On Level" group at the beginning of the second quarter.

36.

As a follow up to the October 8, 2007 meeting, Mrs. Long requested Christina's 2nd grade scores from CST Rogers that were used for placement. CST Rogers stated that Christina scored 37/54.  8 kids in class scored "advanced", 5

scored "on level" and 4 scored "support level". CST Rogers provided 36 week math assessment results and they indicated 38/48.  Mrs. Long requested guidelines for placement and CRT Rogers refused to provide them.

37.

On October 12, 2007, Mrs. Long contacted her Fulton County School Board Representative, Katie Reeves in order to obtain answers about placement and reporting of placement on report cards.  Mrs. Long was referred to Dr. Patty Rooks, Assistant Superintendent of Curriculum and Instruction. Mrs. Long provided Dr. Rooks with her October 8th letter regarding the meeting she and her husband had with school administrators involving placement concerns.  Dr. Rooks intentionally lied and mislead Mrs. Long over a significant amount of time regarding the existence of placement guidelines.

38.

On or about November 19, 2007, Mrs. Long again requested guidelines for placement from CST Rogers as directed by Dr. Patty Rooks who stated that CST Rogers possessed the written guidelines.  CST Rogers provided documents to Mr. Long that were **not** guidelines.

39.

Mrs. Long inquired about test dates, errors in grading by teacher, and other educational items. Mrs. Long attempted to confirm whether or not Christina was moved to "On Level" as promised by Ms. Rolader. Mrs. Long was still trying to determine how Christina was placed because her placement appeared to be arbitrary, undocumented and unsubstantiated. Ms. Rolader   stated that she met with CST Rogers and would get back with Mrs. Long. CST Rogers sent an email with a list of items/scores that purported to reflect Christina's performance but they differed in drastic ways from what was presented during the October 10, 2007 meeting with the Assistant Principal, Mr. Askew.

40.

On or about December 12, 2007, Mrs. Long told Ms. Rolader that Christina was still complaining that spelling words were too easy. It was discovered that Christina's placement had not been changed as promised. One and half weeks later, Ms. Rolader stated that CST Rogers was in the process of determining Christina's current reading placement.  Mrs. Long asked Ms. Rolader to call her in order to find out what was going on.  Ms. Rolader stated that CST Rogers gave Christina a placement test and that Christina would start in the "On Level" group

in January (3rd Quarter).   Mrs. Long confronted Ms. Rolader concerning her misrepresentations about Christina already being in the "on level" group via e-mail.   Again, Mrs. Long asked the teacher to call her, but Ms. Rolader responded in a written note home and indicated that Christina was not in the "On Level" group and that she could not call Mrs. Long because of her schedule.   The Longs were never notified or asked permission to have Christina assessed by CST Rogers or the teacher.   The Longs have since learned from Judy Gilliam, Fulton County Schools Assistant Superintendent Curriculum that parents always had a right to waive students up or down in placement.   The Longs were never informed of this option at Manning Oaks Elementary.

41.

Mrs. Long sent correspondence to Superintendent, James Wilson regarding Manning Oaks educational issues, Christina's inappropriate placement and information concerning placement guidelines.   James Wilson never responded. Mrs. Long mailed an Open Records Request to Superintendent, J. Wilson - requesting demographic records for Manning Oaks, other schools in its cluster and schools in South Fulton County regarding placement data.   Fulton County Schools claimed that documents were not available. Eventually, Fulton County Schools did respond to Mrs. Long's request in some respects. Mrs. Long received a response to

her records request from Mitzi Woody, FCS.  She received a policy dated January

28, 2008.  If policy was correct and had been in affect at the beginning of the

school year, then Christina's placement designation should have been "On-Level"

at the onset of the school year.  Mrs. Long sent an email to all Fulton County

Board members in an attempt to resolve questions concerning placement

guidelines.  No one ever responded.

42.

On or about January 4, 2008, the Longs learned that Christina was

administered an 18 week assessment the same week she was given seven other

tests. Mrs. Long inquired of Ms. Rolader why students and parents were not

notified of these tests and why it was administered when students already had so

many tests. Mrs. Long also inquired about the lack of study guides and books. Mrs.

Long questioned the writing grades and wanted to see copies of Christina's writing

samples but was not provided any. In fact, Ms. Rolader refused to send completed

writing assignments home.  CST Rogers informed Mrs. Long that she would have

to come to the school to see Christina's completed writing samples/assignments.

Mrs. Long had to take time off from work and go to the school to see Christina's

completed writing assignments/samples.

43.

On January 9, 2008, Mrs. Long sent an e-mail to CST Rogers asking why her daughter was not moved to "on level" in the second quarter of third grade as stated by teacher and why was she lied to.  Mrs. Long requested Christina's records. No one in the school system could produce or provide parents with placement guidelines.

44.

On January 14, 2008, Mr. and Mrs. Long met with Sharon Reinig, Principal, CST Rogers, Dr. Patty Rooks, Assistant Superintendent of Curriculum, and Randee Nagler, Area Superintendent. After three and half months, the Area Superintendent admitted that there weren't any placement guidelines.  Shortly thereafter, CST Rogers presented falsified documents purporting to justify Christina's placement. CST Rogers intentionally excluded Christina's Language Arts grades which were perfect. CST Rogers and Ms. Rooks stated that "support" was not below level.  However, certain documents referencing Christina that were allegedly marked by Ms. Porter were checked as "below level".  The third grade placement card purportedly completed by second grade teacher included first grade CRCT scores rather than the second grade CRCT scores.

45.

Mrs. Long requested to view records, writing samples and expressed concern about curriculum coverage for science and social studies.  CST Rogers interfered and offered to go over writing samples with Mrs. Long. Mrs. Long insisted that Ms. Rolader be present to explain the writing since she was the one who graded it. Christina's teacher began to avoid her parents and would not meet without the CST and did not return e-mails to Christina's parents. Mom met with CST and Teacher to review Christina's writing samples.

46.

On or about February 1, 2008 Mrs. Long attended a presentation regarding the serious problems and flaws within the new Fulton County Schools math curriculum and the audit findings as presented by Strategic Teaching and ran into Katie Reeves. Ms. Reeves told Mrs. Long to e-mail her.  Mrs. Long sent an email to Katie Reeves inquiring as to why none of the Board members responded to her letter about placement, guidelines and issues with Manning Oaks Elementary to which Katie Reeves, again, never responded.

47.

Mrs. Long notified the Area Superintendant that emails to Ms. Rolader and CST were not answered or were met with significantly delayed responses. The Longs also advised Area Superintendant of Ms. Rolader's failure to notify parents of alleged behavioral problems.

48.

In light of the attempts by school personnel to create a pattern of behavioral issues regarding Christina, the Longs also requested to observe Ms. Rolader's class.  Ms. Rolader had not been responding to correspondence from the Longs for an extensive period of time.  The Longs asked why it was that she had not responded. After obtaining permission from the CST and Principal to do so, Ms. Rolader advised that she was not responding to emails or other correspondence from the Longs because she was instructed not to by the CST and Principal. In response to long standing records requests, the Longs were advised that first grade and second grade work was destroyed and Mrs. Long was denied her right to observe the class by Principal Reinig.

49.

On April 21, 2008, Mrs. Long attended Superintendent Loe's Math Forum and voiced concerns about Manning Oaks Elementary.  Pursuant to Dr. Loe's request, Mrs. Long sent an email outlining the issues.  More specifically the email to Dr. Loe expressed concerns about Manning Oaks' refusal and/or inability to disclose placement guidelines.

50.

The Longs requested Christina's original class work because no one had reasonably explained why the student's work was maintained by the school and never turned over to the student or his/her parent.  Principal Sharon Reinig refused to turn over Christina's original schoolwork.  Mrs. Long inquired about the lack of curriculum coverage in science and social studies for fear that Christina would not be prepared for the CRCT.  Mrs. Long contended that science had not been covered or had been rushed through for sections that were covered**.**  CST Rogers admitted that the curriculum may not have covered some areas in the curriculum at the time of the CRCT test.

51.

On or about May 1, 2008, Ms. Rolader started sending home behavioral comments on the completed work bi-weekly folder.  The Longs requested to observe class in light of these behavioral comments.  Mrs. Long was denied the right to observe class room even though all assessments were complete.  Principal Sharon Reinig claimed Mrs. Long could not observe because she would be disruptive even though there had never been an occasion whereby Mrs. Long exhibited disruptive or unruly behavior.

52.

Mr. and Mrs. Long had a brief meeting with Superintendent, Dr. Cindy Loe on May 13, 2008.  Although the Longs' were clearly attempting to follow and complete Fulton County Schools' issues resolution process in its entirety, they were never provided with a formal hearing to address their issues and concerns.

53.

On or about July 16, 2008, the Longs faxed correspondence to Superintendent of Fulton County Schools, Dr. Cindy Loe. Said communication, among other things, requested a fresh start to be effectuated by a transfer from Manning Oaks Elementary to New Prospects Elementary School, in as much as

Mrs. Long had met with the Assistant Principal at New Prospect Elementary School and thought that New Prospects would be a good fit for Christina.

54.

Mrs. Long's communication to Dr. Loe made the following additional very simple requests: 1) Christina and siblings receive a waiver to attend New Prospect; 2) transportation be provided; 3) Christina receive services under the Talented and Gifted Program; 4) Christina's third grade report card be corrected; 4) and copies of Christina's third grade work be provided to her parents.

55.

On or about July 25, 2008, Area Superintendent, Randee Nagler, on behalf of Superintendent Loe, responded and denied each and every request to transfer and intentionally sabotaged any hope of a "fresh start". He also provided the principal at New Prospect Elementary negative information about the Longs and informed the principal of his intent not to allow Christina to transfer.

56.

Equally and perhaps more disturbing than Nagler's denial of a transfer was her out right refusal to provide information and/or Fulton County Schools' policy

on the Talented and Gifted Program notwithstanding Mrs. Long's repeated request for the same. Her refusal clearly manifests bad, illegal, unethical and immoral intentions since she was on specific notice that Christina was academically two grades ahead based on her NY testing records, her IQ results, and her Georgia testing records. She was also on specific notice that Christina's **third grade** Iowa Tests (**taken at 6 years and 11 months old**) registered a National Percentage Rank of 50%, which illustrated that 50% of all American school children three years older than Christina scored lower than Christina.

57.

In fact, Nagler's response defied the very logic articulated in her basis for denial. More specifically Nagler wrote: 'Finally you have requested that your daughter be referred to the gifted program. A threshold determination is the school Christina will attend for the 2008-2009 school year. Once that is determined, I will be happy to provide you information regarding that process in accordance with State standards, including State Rule IDDD, Education Program for Gifted Students. Please note that all Fulton County schools follow state and system guidelines for the identification of students for the Fulton County Gifted program. The school staff at New Prospect would follow the same guidelines regarding Christina and her eligibility into the TAG program." If, in fact, New Prospect

and/or any other Fulton County school has to follow the same guidelines, as related to identifying gifted kids, then why did a determination have to be made concerning which school Christina would attend as a condition precedent to providing Mrs. Long the simple information she requested concerning TAG?

58.

The Longs rejected the suggestion in the letter that they move to the New Prospect Elementary district in order to transfer to that school.

59.

On or about August 1, 2008, prior to the start of the school year, Mrs. Long met with Dr. Marvin Reddish, Assistant Principal of Lake Windward Elementary as several messages left by Mrs. Long for Charlia Faulkner, Principal for New Prospect were never returned. The Longs decided to move so that their daughter could attend a school other than Manning Oaks Elementary and New Prospect Elementary given the correspondence that preceded them.  They believed that Christina could not get a fresh start there.

## Fourth Grade:  August 2008 – August 2009

60.

On or about August 10, 2008, Martha Messina, Principal of Lake Winward Elementary School, called Mr. and Mrs. Long at home and requested a meeting. The Longs obliged.  Mrs. Messina, during the meeting, stated that she too had received the letter from Randee Nagler. Ms. Messina expressed her intent to follow the letter notwithstanding her concerns about its fairness or accuracy.  The Longs were shocked to learn that Ms. Nagler was intent on not allowing Christina a fresh start or a right to attend a Fulton County School without scrutiny and retaliation from the Fulton County School District. Ms. Messina, Ms. Nagler and Christina's teachers repeatedly violated Christina's rights and those of her parents by violating District Policy, section K-General Public Relations; Parents Rights number KD(1) which states that "Every parent has the right to participate in meaningful parent-teacher communication..; expect that the local school and/or central office will return calls and acknowledge requests for information in a timely manner within **2** business days unless an emergency situation arises and expect reasonable supervision for his or her student while under school authority."  This policy also states that "Parents should contact the student's teacher directly whenever the

parent has a question or desires further information concerning the progress or education of their student."

61.

On or about August 25, 2008, Mrs. Long notified Patricia Clements (homeroom teacher) that Christina was being bullied by another student, but the teacher never responded.

62.

On or about August 25, 2008, Mrs. Long requested a conference with Christina's Reading-Social Studies teacher, Ms. Julie May. Ms. May initially responded she could meet.  However, she reversed her decision and emailed Mrs. Long indicating that she could not meet and that Mrs. Long needed to schedule a meeting time with Ms. Messina that is good for Ms. Messina.

63.

Mrs. Long attempted to speak with the school's teacher and the gifted teacher regarding Christina's placement, but could not because of the restrictions by Fulton County Schools and Principal.

64.

On or about September 2, 2008, Mrs. Long sent emails to Ms. Clements and Ms. May asking about grading, weighting of grades and how Christina was acclimating.  Mrs. Long also inquired about teacher approving books at appropriate reading levels for assignments and results of Christina's assessments. There was no response.

65.

On or about September 11, 2008, Mrs. Long emailed homeroom teacher stating that Christina had a doctor's appointment and asked if the teacher could send home any work that would be missed between the start of school and 11:00 a.m.  There was no response.

66.

On or about September 16, 2008, Mrs. Long sent an email to Ms. May asking if reading was included with writing or if writing was included with Language Arts. Mrs. Long also informed Ms. May that Christina could not hear her during vocabulary tests and was afraid to ask teacher to repeat statements.  The teacher never responded.

67.

On or about September 22, 2008, Christina's classmate (a male student) called Christina a "Lesbian".  Mrs. Long sent an email to the principal right away. Ms. Messina never responded. In November, Christina was still complaining that the same young man was now calling Christina gay and stupid repeatedly. Christina informed her homeroom teacher about the repeated harassment.  Teacher said that she did not feel that Lesbian was a bad word and that gay only met happy and joyful.  She also told Christina to work it out with the other student.  Mrs. Long sent another e-mail to the principal.

68.

Mrs. Long sent a request to Principal, Messina requesting a meeting with Ms. Mullen, Talented and Gifted Teacher. There was no response. So, Mrs. Long sent a follow-up e-mail and Principal refused to let Mrs. Long speak with the TAG teacher.  The principal twice denied the Longs an opportunity to speak with the TAG teacher.

69.

Mr. and Mrs. Long met with Principal and CST.  Parents inquired about books, tests, grades, and voiced concerns. The school never provided the Longs

with clear method of weighting and grading. Mrs. Long provided a list of new questions and those that remained unanswered, Mrs. Long followed up with Ms. Messina, to no avail, on several different occasions. Ms. Messina repeatedly refused and/or failed to respond to questions. The Area Superintendent, Randee Nagler, also was involved in practice of refusing and/or failing to answer questions pertinent and essential to Christina's receipt of a quality education equal to students in her class.

70.

On or about October 8, 2008, Mrs. Long sent an email to Ms. Messina concerning her failures to respond to several outstanding issues.

71.

On or about October 10, 2008, Mr. and Mrs. Long met with Ms. Messina, and Teachers (May and Clements).  The first quarter report card was discussed but not provided in meeting.  Mr. and Mrs. Long reviewed the report card later at home. Christina received poor citizenship comments even though such had never been discussed with parents the entire school year. Mrs. Long asked Ms. Messina to remove negative comments from Christina's report card because teachers never communicated progressively with parents concerning any issues with Christina

notwithstanding Mrs. Long's obvious availability and attempted dialogue requesting feedback from teachers.  The principal refused to remove comments and stated that "this email is the kind of stuff that caused this problem in the first place."

72.

Mrs. Long sent a certified letter to Amy Barger, FCS TAG Director requesting a meeting. Ms. Barger did not respond.  A follow up e-mail was sent almost one month later again requesting a meeting with the FCS TAG Director, Amy Barger.  FCS TAG Director did not grant a meeting and directed Mrs. Long back to the Principal, Ms. Messina.

73.

On or about February 9, 2009, there was a meeting with Ms. Messina, Principal at Mrs.  Long's request. Written questions were submitted as a follow up to questions that had been outstanding for the past three weeks. One month later, Ms. Messina responded, via email, a forwarded response from the Area Superintendent who had intentionally held up responses from being sent to the Longs.

74.

On or about June 8, 2009 Principal Martha Messina of Lake Windward Elementary School, referenced Christina's "young" age as a negative factor and an excuse as to why Fulton County Schools thought that Christina was not prepared to be a 5th grader even though she had just successfully completed 4th grade.

75.

On or about August 10, 2009, rather than enduring anymore discrimination by Fulton County Schools, Mr. and Mrs. Long, at a cost of approximately $10,000.00 dollars per year , enrolled Christina Long into private school. Also, in order to improve Christina's reading level which was adversely impacted by the systematic age discrimination experienced by Christina during her enrollment in the Fulton County School System, the Longs enrolled Christina in a 5 week summer reading class at the cost of $335.04 per week.

76.

The Longs' have since re-enrolled Christina in a Fulton County School (Webb Bridge Middle School), but she is not, nor has she ever been, enrolled in the talented and gifted program.

## **STATEMENT OF CLAIMS**

### 77.

The allegations set forth in paragraphs seven through seventy-seven are incorporated by reference herein.

## **AGE DISCRIMINATION**

## **AGE DISCRIMINATION ACT OF 1975**

## **42 U.S.C. SECTIONS 6101-6107**

### 78.

Christina's age based discrimination **was discovered on or about June 9, 2009** when Plaintiff's were invited by Marcy Messina, Principal of Lake Windward Elementary School, to review educational records that had been repeatedly requested by Plaintiff Marlene Long.

### 79.

More specifically, on or about May 11, 2009, Plaintiffs Vincent and Marlene Long, wrote a letter to Marcy Messina, Principal of Lake Windward Elementary School complaining about what they perceived to be racial discrimination against her daughter Plaintiff Christina Long.

80.

On or about June 08, 2009 Principal Messina responded and denied that Lake Windward Elementary and/or Fulton County Schools discriminated against Christina because of race.  However, Principal Messina's letter did acknowledge that the school's assessment and placement decisions were based on Christina's "**<u>young age</u>**".

81.

Principal Messina's letter further stated "…I have sent copies of Progress Skills Checklist and Report Card. The other educational records you seek are available for review at the school." Subsequent to receiving Principal Messina's June 08, 2009 letter Plaintiff Marlene Long went to Lake Windward to review the "other educational records" referred to in Principal Messina's June 8, 2009 letter and discovered a document entitled "Fulton County Schools Student Enrollment Form" that was dated for January 10, 2006. Said document has the words "**<u>underage"</u>** written at the top of it.

82.

Upon information and belief, Christina was systematically discriminated against by those in authority because of her age. Objective written criteria was not in existence or not utilized in her case. Instead, subjective criteria were employed to deprive Christina of an equal education because of her age and the Recipients

belief and conclusion that Christina was too young and too perform as well as her national standardized test results indicated.

83.

While the Defendant-Fund Recipient purports to have maintained a "Continuous Achievement" objective whereby students were supposed to be met at their place of academic aptitude by application of Placement Categories (i.e., below level, on level, support level, advance and accelerated), these purported Placement Categories were not in a written and objective format, during the period of discrimination against Christina. The lack of objective criteria facilitated the discrimination experienced by Christina. Furthermore, when the Placement Criteria was arguably established it did not and does not allow for interim academic movement during the existing school year.

84.

What should have been the most foundational criteria (i.e., CRCT and ITBS scores) for placement determinations were ignored in the case of Christina. During the time period in which Christina was placed below level, her CRCT scores nor ITBS scores supported such a placement.

85.

Upon information and belief Fulton County School Administrators and school personnel took on a gang mentality to try everything in its power to move Christina back in grade level by undermining her academically by fabricating behavioral problems.  Christina's desire for learning has been stifled by those who should be proponents of academic excellence.   For all the unsubstantiated claims made by those in academia directly or indirectly referencing to Christina's age, not one person recommended inside or outside professional evaluation of Christina's ability or maturity by a social worker, psychologist or physician. A student who should have been embraced and celebrated for her giftedness instead was isolated and negatively targeted because she was "too young".

## SEX DISCRIMINATION

## TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

## 20 U.S.C. SECTION 1681(A)

86.

On or about September 22, 2008, Christina's classmate (a male student) called Christina a "Lesbian".  Mrs. Long sent an email to the principal, Ms. Messina, right away.  Ms. Messina never responded.

87.

Christina's classmate continued to refer to her as "Lesbian" and "Gay." Again it was reported to Mrs. Messina but she never responded.

88.

On or about November 7, 2008 the sexual harassment/lesbian name calling continued and was reported to Ms. Messina again but she never responded to the complaint.

89.

On or about November 12, 2008 the Longs wrote another letter to Mrs. Messina concerning the resolution of the sexual harassment being endured by Christina while trying to study and obtain an education. There was no response.

90.

Subsequent to November 12, 2008 Christina was still upset and complaining about the actions of the same young man who was repeatedly her lesbian, gay and stupid . Christina informed her homeroom teacher about the repeated harassment. The teacher's only response was to tell Christina that the words weren't bad. She never took action to stop the young man's taunts even though it was apparent the young man was not commenting on Christina's "happy state."

91.

Defendants intentionally showed indifference to the harassment to punish Mrs. Long for attempting to communicate with school officials regarding their incorrect placement of Christina.

92.

Defendants' actions exhibited deliberate indifference as Defendants took no action to stop the actions. Such deliberate indifference allowed the harasser to gain ground and to continue with his vicious attacks and ultimately to adversely impact Christina's education.

## DUE PROCESS VIOLATION

## FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

## PATTERN AND PRACTICE AND OR EXERCISE OF CUSTOM

## 42 U.S.C. §1983

93.

On or about October 12, 2005, Marlene Long contacted the Curriculum Support Teacher (CST) at Manning Oaks Elementary to inquire about enrolling Christina. Long advised the CST that Christina had already completed Kindergarten and also provided copies of her IQ scores and assessments from her previous school.

94.

The CST advised the Longs that Manning Oaks would not consider her previous test results and that Christina would have to be enrolled in Kindergarten. At this time, the CST did not provide information regarding at talented or gifted program or eligibility for said program.

95.

Pursuant to Georgia School Board Rule 160-5-1-.28 d(6)(iii) and 160-4-2-.38(2)(e)(2),  the CST and/or Manning Oaks administration were required to, at minimum, consider Christina's previous test results and records as a part of the nomination and evaluation process for the Talented and Gifted Program.

96.

Based upon advice from the CST, the Longs were forced to enroll Christina in the 1st grade in a public school in New York to facilitate the process of enrolling Christina in the first grade at Manning Oaks Elementary.

97.

From the start of Christina's enrollment in January 2006 through the end of the school year, the Longs had communication with the CST, Christina's teachers, and the Principal of Manning Oaks Elementary on at least five different occasions. Although the Longs advised and provided proof that Christina had been assessed as academically 2 grade levels ahead, neither the CST, her teachers, nor the principal provided any information about the availability of a talented and gifted curriculum during any of these communications.

98.

Throughout Christina's enrollment in Fulton County Schools, Marlene Long regularly inquired about Christina's progress, advised her teachers that Christina complained that she was not being challenged, and asked teachers about opportunities for more challenging assignments.

99.

The Longs specifically requested information about the Talented and Gifted Program from Christina's teachers, her principals, and the Talented and Gifted teacher at her schools on numerous occasions. Under direction from Christina's principals and various superintendents, school officials refused to provide Christina with information about the Talented and Gifted Program or an opportunity to be tested for the Talented and Gifted Program.

100.

Pursuant to Georgia School Board Rule 160-4-2.38(2), Christina was entitled to receive information regarding the talented and gifted program, including notice of :

1 . The gifted education program operated by the local school system , referral procedures and eligibility requirements .

2. Initial consideration of a student for gifted education services .

3. The student 's eligibility status after an evaluation, at which time the parents or guardians shall be afforded an opportunity for a conference to discuss student eligibility criteria and placement.

4. The type of service to be provided annually , the teaching methods to be used and the time allotted for the student to receive gifted services . Parents or guardians shall also be informed of the objectives designed for students to meet and the manner in which evaluation of the mastery of these objectives will be conducted .

5. The performance standards the student shall meet for the continuation of gifted services.

101.

Pursuant to Georgia School Board Rule 160-4-2-.38(2)(e)(1), Christina was eligible for the talented and gifted program and was therefore entitled to special educational services pursuant to O.C.G.A. 20-5-152(a), which reads in relevant part:

> " All children and youth who are eligible for a general and career education program under Code Section 20-2-151 and who have special educational needs shall also be eligible for special education services…......Special education shall include children who are classified as intellectually gifted, mentally disabled, behavior disordered, specific learning disabled, orthopedically disabled, other health impaired, hearing impaired, speech-language disordered, visually impaired, severely emotionally disturbed, and deaf-blind and who have any other areas of special needs which may be identified."

102.

Defendants failed to provide Marlene Long with a formal hearing to address her grievances as required by O.C.G.A. 20-2-1160.

103.

At all times, Defendants acted under color of state law.

104.

At all times relevant hereto Plaintiff's suffered and was denied the due process of law as result of Defendants' policy, practice and/or custom of refusing to provide information necessary to afford Plaintiff Christina Long with an opportunity for a gifted and talented education and refusing to evaluate Christina Long for placement in the talented and gifted program.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

## AGE CLAIMS

105.

Plaintiff's age claim was filed with the U.S. Department of Education, Office of Civil Rights (OCR) on November 5, 2009 a date within (180) days from the date the complainant first had knowledge of the age based discrimination . (See

Exhibit 1, Plaintiff's First Complaint).   The age based discrimination occurred on

June 8, 2009.   More specifically, Plaintiff's age claim with the OCR was filed

(150) days after the occurrence of the June 8, 2009 act of age discrimination.

106.

With respect to actions brought for relief based on an alleged violation of

the provisions of  42 U.S.C.S Section 6101 et seq., administrative remedies shall

be deemed exhausted upon the expiration of 180 days from the filing of an

administrative complaint during which time the Federal department or agency

makes no finding with regard to the complaint, or upon the day that the Federal

department or agency issues a finding in favor of the recipient of financial

assistance, whichever occurs first. In this case, although May 5, 2010 was the 181st

day since the Plaintiffs' filed their age based claim with the OCR-the OCR  (as of

May 5, 2010) made no finding with regard to the complaint. Therefore, Plaintiff

has exhausted the administrative remedy promulgated by 42 U.S.C.S. Section

6104(f).

107.

There is presently no lawsuit pending in any court of the United States

concerning any of the matters averred in this complaint.  Furthermore, on June 30,

2010, Plaintiff forwarded the attached written demand for relief to United States

Attorney General, the Secretary of Health and Human Services, and the Secretary

of Education. (See Exhibit 2, Plaintiff's First Complaint).  Thirty (30) days have lapsed since each of the above referenced agencies received their respective demands for relief and no relief has been granted.  Therefore, Plaintiff has exhausted the administrative remedy promulgated by 42 U.S.C.S. Section 6104(e) and this lawsuit is ripe and properly before this Court.

## **PLAINTIFFS' KNOWLEDGE OFAGE**

## **BASED DISCRIMINATION**

### 108.

At all times relevant hereto and during the averment of the underlying facts in this case the Plaintiff outlined her case in the narrative. Plaintiffs' averments are listed in the order of chronological occurrence as opposed to when the Plaintiff became aware and knowledgeable of the underlying facts.

### 109.

More specifically, as related to the allegations of age based discrimination Plaintiffs aver that Plaintiff Marlene Long, on May 12, 2009, sent a letter to Ms. Messina, the principal of Lake Windward Elementary School requesting several of Christina's educational reports, expressing disappointment with the school's inferior treatment of them and stating her belief that the reason for said treatment was **racially** motivated.

110.

Plaintiff Marlene Long received a response via U.S. Postal Mail from Ms. Messina, dated May 18, 2009, but postmarked June 8, 2009, informing her that Christina was not being discriminated against on the basis of race but noting Christina's "young age".

111.

Plaintiff Marlene Long further avers that the correspondence from Ms. Messina invited her to visit Lake Windward Elementary School and review some of the documents previously inquired about in her May 12, 2009 letter and earlier letters.

112.

On or about June 10, 2009 Plaintiff Marlene Long visited Lake Windward Elementary School to review said documents and noted that one of the documents dated January 10, 2006, had a written note with the term "underage" on it.

113.

Plaintiffs by and through Marlene Long, came to the conclusion in June 2009, after reviewing the records, that based on the totality of the circumstances— the previously described inferior treatment, Ms. Messina's correspondence

mentioning Christina's "young age" and the document with the note also referencing Christina's age—that Plaintiff Christina was being discriminated against by Lake Windward Elementary School teachers and administration on the basis of age.

## **DAMAGES SUMMARY**

### 114.

As result of the Defendant-Recipient's age and sex based discriminatory treatment of Christina Long, her academic success suffered and she consistently scored lower on objective examinations such as the CRCT and the ITBS. The evidence will show that from the time Christina entered the Fulton County School System until the time she left in August of 2009, her academic performance decreased.

### 115.

Christina has been denied equal access to school services as presented and available in Fulton County Schools.  She was not permitted to avail herself of counselors or gifted teachers as her giftedness should have dictated and as was substantiated by documentation presented to school administrators when she was initially enrolled in 2006 and thereafter.

116.

Christina's opportunity for advancement and academic acceleration have been thwarted and impeded by Fulton County Schools and its agents. Christina's reading level and ability was systemically lowered by teachers and administrators from being one year above grade level at the onset of first grade, to "on level", to "below level." Christina's placement levels decreased notwithstanding the absence of objective criteria to support her lower placement.

117.

Even though Fulton County has a practice of allowing parents to sign waivers to allow their children to be placed above the level of that recommended by Fulton County Schools, in the case of Christina, because of her young age, she was denied such opportunity. In fact, even though the Longs challenged Fulton County Schools' placement of Christina and requested that Christina be moved to a higher, more appropriate level of reading level, the Longs' request was denied and Fulton County Schools advised the Longs that Christina could not be placed on a higher reading level. Further exacerbating the problem Fulton County Schools secretly subjected Christina to additional testing. This was done even though Fulton County Schools already possessed objective criteria (i.e., Christina's ITBS and CRCT scores) that supported the Longs' requested placement. Furthermore,

even if it were found that objective criteria did not support the Longs' requested placement of Christina; Fulton County Schools was on notice that the Longs were willing, able and ready to sign the appropriate waivers to allow Christina to be placed at a higher level. The existence of a waiver and the Long's right to waive Christina into higher placement level were never communicated to the Long's by Fulton County School Administrators.

**WHEREFORE,** Claimants, request that the Court take appropriate actions against the Program Recipient as follows:

A. Apply the Age Discrimination Act of 1975, 42 U.S.C. Sections 6101-6107; Apply Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 (a); which prohibits discrimination based upon  age and sex respectively.

B. Issue an order that the Program Recipient to make Plaintiff whole with full payment of incurred private school tuition fees; and payment of all attorneys fees and other costs accumulated by Claimant to bring this action and achieve justice in the education of Christina Long;

C. Termination of assistance to the Program Recipient under the program  if program recipient fails to comply with any of this Court's orders within 15 business days of the Court's issuance of any such order;

D. Make a finding that the Program Recipient has violated Age Discrimination Act of 1975;

E. Make a determination that the complainant, because of the pervasive and continuous nature of the Program Recipient's violations, has illustrated good cause, and is able to include discriminatory acts occurring from October 1, 2005, to, and including, discriminatory acts occurring as recently as June 8, 2009; and

F.  Issue an order  requiring the program recipient to order an assessment from a qualified professional agreed upon by the parties that assesses the impact of age on class room performance and academic achievement as related to gifted and talented students;

G.  Issue a permanent injunction prohibiting the Program Recipient from discriminating against students based upon their age;

H. Grant Plaintiff Attorney's fees and punitive damages as Defendant-Fund Recipient has acted egregiously in violating Plaintiffs' rights.

Respectfully submitted this 10th day of December, 2010.

*R. Keven Starkey, Esq.*
_____
R. Keven Starkey, Esq.

Counsel for Plaintiff
**The Starkey Law Firm, LLC**
44 Broad Street
Suite 711
Atlanta, GA 30303
(678) 395-5951
(678) 623-5767

rkstarkey@ureach.com